IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DAVID S. WACKER<br>and SHERRY C. WACKER, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 250396G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs challenge Defendant's disallowance of all vehicle and repair expenses for their garbage-hauling company. The tax year at issue is 2016. Plaintiff David S. Wacker appeared *pro se* and testified at trial. Richard Henshaw, auditor, appeared and testified on behalf of Defendant. Plaintiffs' "Exhibit 1" and Defendant's Exhibits A to E were admitted.[1]

## I. STATEMENT OF FACTS

In 2016, Plaintiffs operated Wacker Sanitary as a residential and commercial garbage-hauling sole proprietorship in Portland. According to Mr. Wacker's testimony, Wacker Sanitary's two ("and a half") trucks collected recyclable and compostable material every week and garbage every other week from between 2,200 and 2,300 residential customers and a few commercial customers. The parties agree those garbage trucks were not passenger vehicles for purposes of substantiating vehicle expenses.

/ / /

/ / /

---

[1] The numbering of Plaintiffs' submission did not distinguish documents. The court refers to it as a single 91-page exhibit.

Francise fee invoices from the City of Portland indicate Wacker Sanitary generated revenue of at least $196,962.30 from residential customers each quarter. (Ex 1 at 69–71.) Mr. Wacker testified to the best of his recollection that basic residential rates were $20 to $25 per month in 2016.

The principal evidence introduced by Plaintiffs consists of checkbook registers. (Ex 1 at 75–88.) The registers show intermingled business and personal expenses described with a single word or short phrase, such as "Costco," "Macys," or "Ab Tr Re." (*Id*. at 75.) Mr. Wacker testified that the latter stood for "Absolute Truck Repair." One entry read "Ab Tr Re Peter tranny." (*Id*. at 77.) The registers showed expenses totaling $172,400 to "Preston Worth," which Mr. Wacker testified was for repairing and "finishing" Wacker Sanitary's shop. (*Id*. at 79, 81.)

Plaintiffs claimed $920,233.70 in Schedule C expenses for Wacker Sanitary on their 2016 return, including $65,913 for "car and truck" and $63,791 for "repairs and maintenance." (Ex 1 at 3; A at 3.) After audit and conference, Defendant allowed deductions for $664,505 of those expenses, including full bonus depreciation for two 2011 Lodal trucks purchased on June 27, 2016. (Exs C at 13; E at 10-11.) Defendant disallowed all other deductions for car and truck and repairs and maintenance expenses. (Ex C at 13.)

At trial, Plaintiffs asked the court to allow "most or all" of their claimed truck expenses ($129,704 total for car and truck and repairs and maintenance) plus $172,400 in expenses for work done on the shop.[2] Defendant asked to have its notice of assessment upheld.

/ / /

/ / /

---

[2] Plaintiffs chose not to present evidence supporting reversal of Defendant's other adjustments.

## II. ANALYSIS

The issue is whether and to what extent Plaintiffs may be allowed deductions for Wacker Sanitary's truck expenses and for the maintenance of its shop. The deductibility of those expenses is governed by the federal Internal Revenue Code (IRC) because, subject to modifications not pertinent here, Oregon defines taxable income by reference to that code. *See* ORS 316.022(6); 316.048.[3] Because Plaintiffs ask the court to change their tax assessment, they must bear the burden of proof. *See* ORS 305.427.

Ordinary and necessary expenses incurred in carrying on a trade or business are deductible under IRC section 162(a). Deductions may be allowed for the costs of operating vehicles and of maintaining tangible property. *See* Treas Reg §§ 1.162-1(a); 1.162-4(a).

Although expenses for repairing real property are deductible, amounts paid for bettering, restoring, or adapting real property to a new use must be capitalized. IRC § 263(a)(1); Treas Reg § 1.263(a)-3(d). Distinguishing repair from bettering, restoring, or adapting requires detailed knowledge of the state of the property and of the work done. For instance, "physical enlargement, expansion, extension, or addition of a major component" to the property is a betterment. Treas Reg § 1.263(a)-3(j)(1)(ii). A property brought from a nonfunctioning "state of disrepair" into operating condition has been restored, not merely repaired. Treas Reg § 1.263(a)-3(k)(1)(iv).

Here, the evidence before the court does not establish whether the amounts paid to Preston Worth were for the shop's repair, as opposed to its betterment, restoration, or another purpose entirely. See Treas Reg § 1.263(a)-3(d). The line entries totaling $173,400 in Plaintiffs' check register are the only relevant documents in evidence; no invoices or contracts detailing the

---

[3] The court's citations to the Oregon Revised Statutes (ORS) are to 2015.

work performed were provided. The magnitude of the expense suggests it was more than routine maintenance. The evidence available does not show that a deduction for shop repair expenses should be allowed.

The evidence of actual expenses for operating and repairing Plaintiffs' trucks is likewise incomplete. No fuel receipts were provided. While several entries in the check register for "Ab Tr Re" are relevant, there are no invoices for truck repair. One of the entries includes the name "Peter," suggesting a possible personal expense. While some of the expenses recorded were undoubtedly for operating and maintaining garbage trucks, it is not possible to distinguish them without more evidence.

In situations where business expenses clearly have been incurred but poor records prevent determining the exact amount of those expenses, courts have sometimes applied the so-called *Cohan* rule. In *Cohan v. Commissioner*, 39 F2d 540, 543-44 (2nd Cir 1930), the court held that taxing authorities should estimate expenses where the fact of the expense is certain but the amount is uncertain. It held as follows with regard to unsubstantiated entertainment expenses:

> "Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. True, we do not know how many trips Cohan made, nor how large his entertainments were; yet there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses. The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any, even though it were the traveling expenses of a single trip. It is not fatal that the result will inevitably be speculative; many important decisions must be such."

While applying the Cohan rule may involve some speculation, there must be a basis in the record on which the estimate is made. *Vanicek v. Comm'r*, 85 TC 731, 742–43 (1985).

Statutes enacted after *Cohan* was decided require strict substantiation for traveling,

entertainment, and passenger vehicle expenses, effectively superseding *Cohan* for those expenses. *See* IRC §§ 274(d); 280F(d)(4). Because Plaintiffs' garbage trucks were not passenger vehicles, they are not subject to strict substantiation. *See id*.

Plaintiffs clearly incurred expenses operating garbage trucks. Lacking other evidence, an estimate of their mileage can be made by estimating the number of their customers and the average amount of street frontage each of their customers had.

Mr. Wacker's testimony that he had 2,200 to 2,300 residential customers is supported by the quarterly revenue reflected on the franchise fee invoices. Dividing the lowest quarterly revenue amount ($196,962.30) by the highest estimated fee for three months' basic service (3 x $25 = $75) yields 2,626. Because some will pay more for extra services, the actual number of customers should be a lower number. The court accepts 2,200 as a credible estimate of the number of Wacker Sanitary's customers in 2016.

The Portland City Code sets a minimum lot width of 36 feet for lots in residential zones. PCC 33.110.202 (Jan 1, 2025), Table 110-3. Wacker Sanitary's garbage trucks drove by each house on their route at least twice every week (to collect recycling and composting) and a third time every other week (to collect garbage)—a total of 130 trips through a route consisting of 2,200 lots at least 36 feet wide. Wacker Sanitary trucks therefore traveled at least 10,296,000 feet, or 1,950 miles.

The 2016 business standard mileage rate is 54 cents per mile. *2016 Standard Mileage Rates*, 2016-2 IRB 265 (IRS NOT 2016). That standard mileage rate may be applied in lieu of fixed and variable costs, including fuel, repairs, and depreciation. Rev Proc 2010-51, 2010-51 IRB 883 (IRS RPR 2010). Because the two trucks purchased at the end of June received a depreciation deduction, the mileage rate cannot be claimed for their use. *See id*. Assuming that

Wacker Sanitary used its new trucks beginning the second half of 2016, mileage can be allowed for the first half of the year: 975 miles.

At $0.54 per mile, there is basis in the evidence to find that Plaintiffs incurred $527 in expenses for operating and maintaining their trucks. *See Cohan*, 39 F2d at 543-44 (holding even "trivial and unsatisfactory" expense deductions should be allowed where there is some basis). Further deductions would require records that were not in evidence. *See* ORS 305.427.

### III.  CONCLUSION

Plaintiffs are entitled to a deduction for nonpassenger truck expenses estimated from testimony, quarterly revenue, and the city's lot requirements.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs be allowed a $527 deduction for their 2016 car and truck expenses.

IT IS FURTHER DECIDED that the remainder of Defendant's adjustments stand without modification.

POUL F. LUNDGREN
MAGISTRATE

*To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court.  Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on March 6, 2026.*